UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAMARA SMALL,
                              Plaintiff,

v.                                      6:03-CV-0822
                                            (GHL)
COMMISSIONER OF SOCIAL SECURITY,
                              Defendant.
_____

APPEARANCES:                              OF COUNSEL:

EMPIRE JUSTICE CENTER                LOUISE MARIE TARANTINO, ESQ.
*Counsel for Plaintiff*
119 Washington Avenue
2nd Floor
Albany, New York 12210

HON. GLENN T. SUDDABY               WILLIAM H. PEASE, ESQ.
United States Attorney for the            Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## **MEMORANDUM-DECISION AND ORDER**[1]

**I.**      **BACKGROUND**

      **A.**      **Procedural History**

Plaintiff's mother, on her behalf, filed an application for supplemental security income benefits ("SSI") on May 10, 1993. (Administrative Transcript ("T") at 276-280.) The application

---

[1] The parties consented, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, to the exercise of jurisdiction over this matter by a United States Magistrate Judge. Dkt. No. 18. The matter was referred to the undersigned on February 6, 2007. *Id.*

was granted on July 27, 1994.  (*Id.*)  Pursuant to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996,[2] Plaintiff's case was reviewed for continued eligibility, and on March 11, 1998, she was found no longer eligible for benefits.  (T. at 292-297.)  Plaintiff appealed the decision and on April 29, 1999, an ALJ found that Plaintiff continued to be disabled, and thus eligible for benefits.  (T. at 509-513.)

In 2000, Plaintiff turned eighteen years old and no longer qualified for child's benefits.  On August 11, 2000, the Social Security Administration found that Plaintiff did not meet the eligibility requirements for adult SSI benefits.  (T. at 515-517.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on April 11, 2002.  (T. at 24-41.)  On November 20, 2002, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled.  (T. at 11-18.)

Plaintiff appealed to the Appeals Council and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 3, 2003.  (T. at 3-5.)  Plaintiff commenced this action on July 3, 2003.  (Dkt. No. 1.)

**B.    The Contentions**

Plaintiff makes the following claims:

I.    The Commissioner failed to properly evaluate Plaintiff's claim under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).  (Dkt. No. 11 at 8-17.)

II.    The Commissioner's determination of Plaintiff's residual functional capacity was not based on substantial evidence.  (Dkt. No. 11 at 17-21.)

---

[2]  Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), Pub. L. No. 104-193, § 211(d)(1)(A)(ii), 110 Stat. 2105 (codified at 42 U.S.C. § 1382c).

   III.  A vocational expert should have been utilized.  (Dkt. No. 11 at 21.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 15.)

**II.**  **APPLICABLE LAW**

  **A.**  **Standard for Benefits**

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2005).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

3

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.   Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

4

*Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains

substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III.    THE PLAINTIFF

Plaintiff was born on April 23, 1982. (T. at 292.) She completed the tenth grade (T. at 563) and has worked for a brief period of time, at a pet store cleaning bird cages and as a babysitter. (T. at 501.) Plaintiff alleges disability due to borderline intellectual functioning, a panic disorder, and chronic difficulties with her knees. (Dkt. No. 11 at 2.)

### IV.    THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the alleged onset of disability (T. at 17); (2) Plaintiff's impairments were severe, but did not meet or medically equal a listed impairment (*Id.*); (3) Plaintiff's allegations regarding her limitations were not credible (*Id.*); (4) Plaintiff had the residual functional capacity ("RFC") to perform sedentary work (*Id.*); (5) Plaintiff had no past relevant work (T. at 18); and (5) based upon Plaintiff's RFC, physical and mental limitations, and vocational factors, Rule 201.24 of the Medical-Vocational Guidelines (the "Grid") directed a conclusion that Plaintiff was not disabled (*Id.*).

### V.    DISCUSSION

#### A.    The Commissioner's Evaluation of Plaintiff's Claim Under Listing 12.05(C)

Plaintiff asserts that her mental impairment is medically equivalent to 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C) ("Listing 12.05(C)"). This section of the Code of Federal Regulations relates to subaverage intellectual functioning caused by mental retardation,

6

manifestations of which first appear during a person's "developmental period," *i.e.*, prior to age twenty-two. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C) (2006). The required level of severity for Listing 12.05(C) is met if the following requirement is satisfied: "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

### 1.  IQ Score

On June 17, 2000, Plaintiff underwent an evaluation by William Kimball, Ph.D., who, *inter alia*, administered the Wechsler Adult Intelligence Scale-III test ("WAIS-III test"). (T. at 598.) On the WAIS-III test, Plaintiff earned a verbal IQ score of 74, a performance IQ score of 73, and a full scale IQ score of 71. (T. at 600.) "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with [Listing] 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c) (2006). Thus, considering Plaintiff's lowest score of 71, she did not *per se* meet the requirements of Listing 12.05(C). However, the inquiry does not end there. It must be determined whether Plaintiff's mental impairment is "medically equivalent" to Listing 12.05(C).

### 2.  Medical Equivalence

20 C.F.R. § 416.920(a)(4)(iii) provides: "At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets **or equals** one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled.") (emphasis added). Plaintiff's impairments did not "meet"

7

Listing 12.05(c) because her lowest IQ score was 71, one point above the requirement of 60 through 70.  Despite this, the ALJ must consider whether the impairments are "equal," *i.e.*, are medically equivalent to, the Listing.

A claimant's impairment(s) is medically equivalent to a listed impairment if "it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a) (2006).  Furthermore,

> Under the regulations, the Secretary's determination as to whether the claimant's impairment meets or equals the Listings must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, as shown in the medical evidence, with the medical criteria shown with the listed impairment.  20 C.F.R. § 416.926(a).  Where the claimant's symptoms as described by the medical evidence **appear to match** those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings . . . .  Mere recitation of the medical evidence is insufficient unless the reports referred to contain substantiated conclusions concerning the Listings, and the ALJ expressly adopts the reasoning of those conclusions.

*Kovacevic v. Chater*, Civ. No. 94-600S, 1995 WL 866425, at *8 (W.D.N.Y. Sept. 28, 1995) (emphasis added) (citations omitted).

Accordingly, if Plaintiff's symptoms "appear to match" those described in Listing 12.05(C), but nevertheless the ALJ finds that Plaintiff's impairments do not medically equal that Listing, the ALJ must provide an explanation.

### a. Plaintiff's Claimed Symptoms

In addressing medical equivalence, Plaintiff's IQ score of 71 is a relevant factor.  In *Prentice v. Apfel*, Civ. No. 96-851, 1998 WL 166849, then District Judge Pooler approved Magistrate Judge Di Bianco's Report-Recommendation that provided:

8

> The Commissioner's Program Operations Manual Systems ("POMS") § DI 14515.056(D)(1)(C) states that "slightly higher IQ's (e.g. 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination." "Although the POMS is not published in the Federal Register, and does not have the force of law, it is entitled to persuasive authority." *Frerks by Frerks v. Shalala*, 848 F. Supp. 340, 350 (E.D.N.Y. 1994).

*Id.* at *5. *See also Aviles v. Barnhart*, No. 02CV4252SJFRLM, 2004 WL 1146055, at *7 (E.D.N.Y. May 11, 2004).

Second, regarding Listing 12.05(C)'s requirement of a "physical or other mental impairment imposing an additional and significant work-related limitation of function" component, Plaintiff contends that she has panic and musculoskeletal disorders which impose such limitations. Plaintiff argues that in evaluating these impairments, the ALJ improperly rejected the opinions of a consultative examining psychiatrist, Muhammad Saleem, M.D., regarding Plaintiff's panic disorder, and also improperly relied on the opinions of a consulting physician, Robert Kasulke, M.D., regarding Plaintiff's musculoskeletal disorder. (Dkt. No. 11 at 10-17.) It is significant that in addressing the opinions of Drs. Saleem and Kasulke, the ALJ did so not in the context of step three of the five step sequential evaluation process, *i.e.*, whether the Plaintiff had a listed impairment, but rather in the context of step four, *i.e.*, whether the Plaintiff could perform her past work. T. at 14. This was error.

> As the ALJ's analysis of the medical and testimonial evidence was undertaken in the context of the fourth step of the disability determination, and thus concerned plaintiff's residual functional capacity in light of his IQ and all other claimed conditions, that analysis is not insightful in terms of ascertaining which particular impairment(s) the ALJ found involved more than a *de minimis*

9

>limitation. For these reasons, the Court cannot determine whether either of the limitations identified by plaintiff, beyond his low IQ, satisfies the second prong of Section 12.05(c).

*Baneky v. Apfel*, 997 F. Supp. 543, 547 (S.D.N.Y. 1998)).

### b. The ALJ's Decision

In light of Plaintiff's IQ of 71 and her claimed limitations from panic and musculoskeletal disorders, her symptoms "appear to match" Listing 12.05(C), and therefore the ALJ should have explained why Plaintiff failed to equal that listing. He did not do so. He merely stated that while Plaintiff's impairments were severe, none met any of the Listings. T. at 13-14. Indeed, he failed to discuss at all the second requirement of Listing 12.05(C).[3]

Accordingly, the Court cannot find substantial evidence to support the ALJ's finding that Plaintiff's impairments do not equal Listing 12.05(C). *See Kovacevic*, 1995 WL 866425, at *9 (where the Court ordered remand because the ALJ failed to provide a detailed comparison of the

---

[3] If the ALJ had discussed and analyzed, in the context of Plaintiff's claimed symptoms, the second requirement of Listing 12.05(C), a possible issue then would have been what test he applied. The Second Circuit has not specifically answered the question of what test should be applied regarding a claimant's additional and significant work-related limitation of function. *Keitt v. Barnhart*, No. 04-CV-1347, 2005 WL 1258918, at *4 (E.D.N.Y. May 27, 2005). The First, Eighth, and Tenth Circuits have held that "the limitation other than low IQ is 'significant' if the claimant suffers from an additional physical or other mental impairment that is 'severe,' as that term is defined at step two of the Commissioner's sequential analysis." *Id.* (citing *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *Warren v. Shalala*, 29 F.3d 1287, 1291 (8th Cir. 1994), and *Nieves v. Secretary of Health and Human Servs.*, 775 F.2d 12, 14 (1st Cir. 1985)). The Eleventh Circuit has held that a claimant's impairment meets the requirement if it is more than *de minimis*, but less than severe. *Id.* at *5 (citing *Edwards v. Heckler*, 755 F.2d 1513 (11th Cir. 1985)). On the other hand, the Fourth Circuit has taken a more stringent approach; a claimant is significantly limited for purposes of Listing 12.05(C) if he/she cannot perform his or her prior relevant work. *Id.* (citing *Flowers v. U.S. Dep't of Health and Human Servs.*, 904 F.2d 211, 214 (4th Cir. 1990)). District Courts in the Second Circuit seem to apply the severity test. *See Aviles*, 2004 WL 1146055, at *7; *Devoe v. Barnhart*, No. 3:05CV746, 2006 WL 1272614 (D. Conn. Mar. 15, 2006); and *Antonetti v. Barnhart*, 399 F. Supp. 2d 199 (W.D.N.Y. 2005).

plaintiff's impairment with the Listings and did not explain why plaintiff's impairment did not meet or equal any Listing); *Booker v. Heckler*, Civ. No. 83-5300, 1984 WL 622, at *3 (S.D.N.Y., July 19, 1984) (where the Court reversed the ALJ's determination because the ALJ failed to explain his finding of ineligibility); *Costanzo v. Apfel*, Civ. No. 98-606H, 2000 WL 575660, at *3 (W.D.N.Y. Feb. 8, 2000) (where the Court ordered remand because "the ALJ should have provided a detailed comparison of plaintiff's impairments with the medical criteria shown for the listed impairment, as well as an explanation as to the combined effect of these impairments on plaintiff's ability to work"); *Kyle v. Apfel*, 99 F. Supp. 2d 227, 234 (D. Conn. 2000) (where the Court remanded the matter because the ALJ failed to cite any evidence and did not "set forth the requirements of any listed impairment to point out the shortcomings of the evidence in relation to those requirements"); and *Hanman v. Chater*, Civ. No. 94-0735E(H), 1996 WL 116192, at *7 (W.D.N.Y. Jan. 17, 1996) ("Where the claimant's symptoms as described by the medical evidence appear to match those described by the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings.").

  **B.**  **The Commissioner's Determination of Plaintiff's RFC**

    **1.**  **The Grid**

Plaintiff contends that the ALJ "never considered the real impact" of Plaintiff's non-exertional impairments (specifically her borderline intellectual functioning and panic disorder) when he applied the Grid and found that Plaintiff was not disabled. (Dkt. No. 11 at 19-21.)

It is well-settled that if a claimant suffers from exertional and non-exertional impairments, application of the Grid may not be appropriate. *Bapp v. Bowen*, 802 F.2d 601, 604

(2d Cir. 1986); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996); and *Dombrowski v. Chater*, 960 F. Supp. 558, 567 (N.D.N.Y. 1997) (Scullin, C.J.).  Specifically, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments."  *Bapp*, 802 F.2d 605-06.

For the reasons set forth in part V.A. above, this Court has ordered remand for the Commissioner to address whether Plaintiff's impairments equal Listing 12.05(C).  If it is determined that they do not, the Court recommends that the Commissioner address whether the medical evidence indicates non-exertional impairments that impact on Plaintiff's ability to perform sedentary work, and whether reliance on the Grid is appropriate.

### 2.     Vocational Expert

Plaintiff contends that because the Grid could not be used in this case, the ALJ should have employed the services of a vocational expert.  (Dkt. No. 11 at 21.)  Defendant argues that the presence of a non-exertional impairment does not mandate the use of a vocational expert; rather the need for one is determined on a case-by-case basis.  (Dkt. No. 15 at 10.)

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grid]."  *Bapp*, 802 F.2d 603.  Rather, whether vocational expert testimony is necessary or not should be determined on a case-by-case basis.  *Michaels v. Apfel*, 46 F. Supp. 2d 126, 139 (D. Conn. 1999).  It is only in the case where a claimant's non-exertional impairments significantly

12

diminish "his ability to work – over and above any incapacity caused solely from exertional limitations – so that he is unable to perform the full range of employment indicated by the [Grid], then the Secretary must introduce the testimony of a vocational expert . . . that jobs exist in the economy which claimant can obtain and perform." *Bapp*, 802 F.2d at 603.

Since remand has been ordered as set forth above, upon remand, the Court assumes that if a vocational expert is necessary, the Commissioner will require such testimony.

**WHEREFORE,** it is hereby

**ORDERED**, that this matter is remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[4] for further proceedings consistent with the above.

Dated: March 26, 2007
      Syracuse, New York

*[signature]*
George H. Lowe
United States Magistrate Judge

---

[4] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2005).